**IN THE UNITED STATES DISTRICT COURT FOR THE
NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION**

**BARRIE WOODS, individually
and as a representative of the class,**

      **Plaintiff,**                          Case No. 1:16-cv-5001

**v.**

**MV TRANSPORTATION, INC.**           **(JURY TRIAL DEMANDED)**

      **Defendant.**

## COMPLAINT

Barrie Woods ("Plaintiff"), through his attorneys, on behalf of himself and the class set forth below, brings the following Class Action Complaint against MV Transportation, Inc. ("Defendant" or "MV Transportation"), its subsidiaries and affiliates, and alleges, upon personal belief as to himself and his own acts, and as for all other matters, upon information and belief, and based upon the investigation made by his counsel, as follows:

## INTRODUCTION

1. This consumer class action is brought under the Fair Credit Reporting Act ("FCRA") against a company that routinely and systematically violates the FCRA's basic protections by failing to provide required disclosures prior to procuring a consumer report on applicants and employees.

2. As Defendant's practices were routine and systematic, Plaintiff asserts claims for damages on behalf of himself and a class of similarly-situated individuals on whom Defendant caused a consumer report to be procured without first providing the stand-alone disclosure, as required by the FCRA.

1

## THE PARTIES

3. Plaintiff Barrie Woods is over eighteen years old and resides in Cook County in Illinois.

4. Defendant MV Transportation, Inc. is a foreign corporation that is headquartered in Texas.

5. Defendant MV Transportation, Inc. does business in this state and in this district.

## JURISDICTION AND VENUE

6. This Court has federal question jurisdiction over this action pursuant to 28 U.S.C. § 1331.

7. Venue is proper in this District pursuant to 28 U.S.C. § 1391 because Plaintiff lives and applied to work in this District, a substantial part of the events or omissions giving rise to this claim occurred in this District, and Defendant operates in this District.

## STATUTORY BACKGROUND

8. Enacted in 1970, the FCRA's passage was driven in part by two related concerns: first, that consumer reports were playing a central role in people's lives at crucial moments, such as when they applied for a job. Second, despite their importance, consumer reports were unregulated and had widespread errors and inaccuracies.

9. While recognizing that consumer reports play an important role in the economy, Congress wanted consumer reports to be "fair and equitable to the consumer" and to ensure "the confidentiality, accuracy, relevancy, and proper utilization" of consumer reports. 15 U.S.C. § 1681.

10. Congress was particularly concerned about the use of background reports in the employment context, and therefore defined the term "consumer reports" to explicitly include background checks procured for employment purposes. *See* 15 U.S.C. § 1681a(d)(1)(B).

11. Through the FCRA, Congress required employers to disclose that a consumer report may be obtained for employment purposes before procuring the report. 15 U.S.C. § 1681b(b)(b)(2)(A)(i).

12. Specifically, Congress made it unlawful for an employer or prospective employer to "procure, or cause a consumer report to be procured, for employment purposes with respect to any consumer, unless . . . a clear and conspicuous disclosure has been made in writing to the consumer at any time before the report is procured or caused to be procured, *in a document that consists solely of the disclosure*, that a consumer report may be obtained for employment purposes." 15 U.S.C. § 1681b(b)(2)(A)(i) (emphasis added). This requirement is frequently referred to as the "stand-alone disclosure requirement."

13. Many other provisions of the FCRA are also notice provisions. *See* 15 U.S.C. § 1681b(b)(3)(A) (pre-adverse employment action notice requirement); § 1681b(4)(B) (notification of national security investigation); § 1681c(h) (notification of address discrepancy); § 1681d(a) (disclosure of investigative report); § 1681g (full file disclosure to consumers); § 1681k(a)(1) (disclosure regarding the use of public record information); § 1681h (form and conditions of disclosure); § 1681m(a) (notice of adverse action).

14. Like the other notice provisions in the FCRA, the stand-alone disclosure provision puts consumers on notice that a report about them may be prepared. This knowledge enables consumers to exercise a variety of other substantive rights conferred by the statute, many of which work to ensure accuracy, confidentiality, and fairness. 15 U.S.C. § 1681c(a) (limiting temporal scope of information that can be reported); § 1681e(b) (mandating that consumer reporting agencies employ procedures to ensure "maximum possible accuracy" in reports); § 1681k (requiring consumer reporting agencies that report public record information to employers to either provide notice to the consumer that information is being reported or have "strict

3

procedures" to ensure that information is "complete and up to date"); § 1681i (requiring that consumer reporting agencies investigate any disputed information); § 1681g (requiring that consumer reporting agencies provide a complete copy of the consumer's file to the consumer).

15. Without a clear notice that a consumer report is going to be procured on them, applicants are hindered in their ability to preserve their privacy, and to correct errors or other problems with the reports.

16. As discussed below, Defendant routinely violated the FCRA, and consumers' rights, by failing to provide the required stand-alone disclosure before procuring consumer reports for employment purposes.

## ALLEGATIONS RELATING TO PLAINTIFF

17. Throughout the two years preceding the filing of this action, Defendant has routinely procured consumer reports on applicants and employees from consumer reporting agencies, including Private Eyes, Inc. ("Private Eyes").

18. Private Eyes is a consumer reporting agency because it sells consumer reports for employment purposes.

19. On or around October 28, 2015, Plaintiff applied to work as a shuttle bus driver for Defendant in the State of Illinois.

20. As part of Plaintiff's application process, on October 28, 2015, Plaintiff completed Defendant's "Background Check Authorization" form ("Authorization Form"). (*See* Exhibit 1).

21. The Authorization Form Defendant provided to Plaintiff contains extraneous information that violates the FCRA's stand-alone disclosure requirement.

22. MV Transportation's Authorization Form goes much farther than merely authorizing MV Transportation to procure a report. First, the Authorization Form contains a

4

perpetual authorization for background checks run by MV Transportation and/or MV Transportation's consumer reporting agency throughout the duration of Plaintiff's employment.

23. Specifically, the form states that the applicant authorizes MV Transportation to "procure additional consumer report(s), criminal background check(s), and/or investigative consumer report(s) (as defined by federal law) during my employment *without providing additional disclosures or obtaining additional authorization*." (Emphasis added) (*See* Exhibit 1).

24. The form contained additional extraneous information. Such as, "[e]xcept as otherwise prohibited by state law, I consent to and authorize the Company to share this information with Company's current or prospective clients, customers, others with a need to know, and/or their agents (including but not limited to staffing/placement company clients and vendor credentialing companies for business reasons[.]" *Id.*

25. Because the Authorization Form contains vast and extraneous information in violation of the FCRA, including a limitless release of information to other third parties' and a perpetual authorization to procure another background check at any later date, it violates the FCRA.

26. Defendant's inclusion of this extraneous information was intentional and self-interested. In particular, the above language allowed Defendant and its consumer reporting agency to procure information on applicants and employees, at any time during their employment, and purported to operate as a functional waiver of employees and applicants' privacy rights.

27. State and federal agencies, schools, financial institutions, and other entities, all of which fall within the broad release language included in the Authorization Form, are subject to specific privacy laws which regulate nonpublic information. For example, the Family

5

Educational Rights & Privacy Act, 20 U.S.C. § 1232(g); 34 C.F.R. Part 99, protects school records from disclosure absent consent from the student. Similarly, the Gramm-Leach-Bliley Act, 15 U.S.C. §§ 6801-6809, requires financial institutions to safeguard nonpublic information.

28. Most states' government data laws are even more restrictive, and prohibit the disclosure of information on individuals held by many state agencies. *See*, *e.g.*, Russom, Miriam B., Robert H. Sloan, and Richard Warner, Legal Concepts Meet Technology: A 50 State Survey of Privacy Laws, Proceedings of The 2011 Workshop on Governance of Technology, Information, and Policies-GTIP '11 (2011), (available at https://www.acsac.org/2011/workshops/gtip/p-Russom.pdf).

29. Defendant's failure to provide a stand-alone disclosure violates a fundamental protection afforded to applicants and employees under the FCRA, is contrary to the unambiguous language of the Act, and is counter to FTC guidance and case law. In fact, the FTC has stated that disclosure forms must not be "encumbered by any other information . . . to prevent consumers from being distracted by other information side-by-side with the disclosure." *See* Letter from Clarke W. Brinckerhoff, Fed. Trade Comm'n, to H. Roman Leathers, Manier & Herod (Sept. 9, 1998) (emphasis added) (*See* Exhibit 2). Defendant's form runs afoul of this requirement.

30. The Authorization Form violates the FCRA in other ways as well.

31. The Authorization Form includes language regarding additional notices that the Plaintiff acknowledges receiving "separately from the Company," and has "reviewed and underst[ood] the information, statements and notices in the Background Check Disclosures, the State Disclosure, and the California State Law Disclosures, as well as the Background Check Authorization."

32. The Authorization Form also contains a state-specific section which further

6

violates the stand-alone disclosure requirement of the FCRA. (*See* Exhibit 1). These state-specific statements are not an authorization for Defendant to procure a consumer report and are also not disclosures of the fact that a report may be procured for employment purposes. Rather, these statements are extraneous information that renders any disclosure required under the FCRA not "clear and conspicuous" and also not a document consisting "solely" of the disclosure. Accordingly, the inclusion of these statements on the form violates the FCRA.

33. These statements are not a mere authorization for Defendant to procure a consumer report or a stand-alone disclosure of the fact that a report may be procured for employment purposes. Accordingly, the Authorization Form does not constitute the stand-alone disclosure required under the FCRA.

34. Despite Defendant's failure to provide a compliant, stand-alone disclosure and authorization form to Plaintiff, on or around November 4, 2015, Defendant procured a consumer report on Plaintiff from Private Eyes. (*See* Exhibit 3).

35. Plaintiff suffered a concrete injury as a result of Defendant's illegal conduct because Defendant obtained information about Plaintiff which it had no legal right to obtain. Further, Plaintiff was deprived of information to which he had a statutory right.

## ALLEGATIONS RELATING TO DEFENDANT'S PRACTICES

36. The text of the FCRA is pellucid and clear. Defendant is required to obtain written authorization and provide a disclosure in a document consisting solely of the disclosure before procuring consumer reports.

37. The disclosure Defendant provided is not compliant with the FCRA's plain language because it includes significant amounts of extraneous information.

38. Numerous courts have found the inclusion of this kind of information to violate the FCRA. *See, e.g.*, *Jones v. Halstead Mgmt. Co., LLC*, 81 F. Supp. 3d 324, 333 (S.D.N.Y.

7

2015) (finding disclosure to not stand-alone when it included, among other things, "all sorts of state-specific disclosures"); *Groshek v. Time Warner Cable, Inc.*, No. 15-C-157, 2015 U.S. Dist. LEXIS 100328, at *4-5 (E.D. Wis. July 31, 2015) ("[T]he Court agrees with the plaintiff and those courts which maintain that the language of the statute is simple and straightforward. [Defendant] acted recklessly by including extraneous information in the disclosure."); *Moore v. Rite Aid Hdqtrs Corp.*, No. CIV.A. 13-1515, 2015 U.S. Dist. LEXIS 69747, at *35 (E.D. Pa. May 29, 2015) ("[T]he text of the statute and the available agency guidance demonstrate[] that the inclusions of information on the form apart from the disclosure and related authorization violates § 1681b(b)(2)A)."); *Rawlings v. ADS Alliance Data Sys., Inc.*, No. 2:15-CV-04051-NKL, 2015 U.S. Dist. LEXIS 81055, at *12, 13 (W.D. Mo. June 23, 2015) (stating "[w]here the FCRA's language is clear, a dearth of guidance does not justify an objectively unreasonable interpretation of the statute" and denying motion to dismiss where form contained extraneous state law disclosures and plaintiff alleged that defendant "knowingly used a disclosure form . . . that contained extraneous information in violation of the FCRA"); *Miller v. Quest Diagnostic*, 85 F. Supp. 3d 1058, 1061 (W.D. Mo. 2015) (finding "inclusion of the state-mandated consumer report information, administrative sections, and release language in the disclosure violates 15 U.S.C. § 1681b(b)(2)").

39. Defendant knew that it had an obligation to provide a stand-alone disclosure and obtain the consumer's authorization before procuring a consumer report.

40. By including the extraneous information in its disclosure, Defendant also deviated from a legally binding certification it provided to its consumer reporting agencies.

41. The FCRA requires that, prior to procuring consumer reports, employers certify to the consumer reporting agency that they will comply with the FCRA's stand-alone disclosure requirements. *See* 15 U.S.C. § 1681b(b)(1).

42. In accordance with their standard procedures, the consumer reporting agencies from whom Defendant acquired consumer reports during the two years preceding the filing of this Complaint, including Private Eyes, required Defendant to certify that it would comply with the stand-alone disclosure provisions of the FCRA.

43. Defendant did, in fact, certify to the consumer reporting agencies that it would comply with the stand-alone disclosure and authorization provisions of the FCRA.

44. Defendant did not procure Plaintiff's report in connection with any investigation of suspected misconduct relating to employment, or compliance with federal, state, or local laws and regulations, the rules of a self-regulatory organization, or any preexisting written policies of the employer.

45. By systematically inserting extraneous information into Plaintiff's and other class members' disclosures, Defendant willfully violated 15 U.S.C. § 1681b(b)(2)(A)(i).

46. Plaintiff experienced a concrete injury in the form of being deprived of a disclosure to which he was statutorily entitled as a result of Defendant's failure to comply with the FCRA's stand-alone disclosure.

## CLASS ACTION ALLEGATIONS

47. Plaintiff asserts his claims on behalf of the class defined as follows:

All individuals on whom Defendant procured a consumer report for employment purposes in the two years predating the filing of this Complaint and continuing through the date the class list is prepared.

48. <u>Numerosity</u>: The class is so numerous that joinder of all class members is impracticable. Defendant employs thousands of workers, many of whom are members of the class.

49. <u>Typicality</u>: Plaintiff's claims are typical of the class members' claims. The FCRA violations committed by Defendant were committed pursuant to uniform policies and

procedures, and Defendant treated Plaintiff in the same manner as other class members in accordance with its standard policies and practices.

50. <u>Adequacy</u>: Plaintiff will fairly and adequately protect the interests of the class, and has retained counsel experienced in complex class action litigation.

51. <u>Commonality</u>: Common questions of law and fact exist as to all members of the class and predominate over any questions solely affecting individual members of the class.

52. Class certification is appropriate under Fed. R. Civ. P. 23(b)(3) because questions of law and fact common to the class predominate over any questions affecting only individual members of the class, and because a class action is superior to other available methods for the fair and efficient adjudication of this litigation. Defendant's conduct described in this Complaint stems from common and uniform policies and practices, resulting in common violations of the FCRA. Members of the class do not have an interest in pursuing separate actions against Defendant, as the amount of each class member's individual claim is small compared to the expense and burden of individual prosecution, and Plaintiff is unaware of any similar claims brought against Defendant by any members of the class on an individual basis. Class certification also will obviate the need for unduly duplicative litigation that might result in inconsistent judgments concerning Defendant's practices. Moreover, management of this action as a class action will not present any likely difficulties. In the interests of justice and judicial efficiency, it would be desirable to concentrate the litigation of all class members' claims in a single forum.

### CLAIM FOR RELIEF
*Failure to Provide Stand-Alone Disclosure*

53. Defendant violated the FCRA by procuring consumer reports on Plaintiff and class members without making the stand-alone disclosure required by the FCRA. *See* 15 U.S.C.

10

§ 1681b(b)(2).

54. Defendant acted willfully and in knowing or reckless disregard of its obligations and the rights of Plaintiff and the other class members.

55. Defendant's willful conduct is reflected by, among other things, the fact that it violated a clear statutory mandate set forth in 15 U.S.C. § 1681b(b)(2), and that Defendant certified that it would comply with 15 U.S.C. § 1681b(b)(2).

56. Defendant's willful conduct is further reflected by the following:

    (a) The FCRA was enacted in 1970; Defendant has had over 40 years to become compliant;

    (b) Defendant's conduct is inconsistent with the FTC's longstanding regulatory guidance, judicial interpretation, and the plain language of the statute;

    (c) Defendant repeatedly and routinely uses the same unlawful document it provided to Plaintiff with all of its applicants and employees on whom it procured consumer reports or otherwise failed to provide them with the required stand-alone disclosure;

    (d) Despite the pellucid statutory text and there being a depth of guidance, Defendant systematically procured consumer reports without first disclosing in writing to the consumer ***in a document that consists solely of the disclosure***, that a consumer report may be obtained for employment purposes; and

    (e) By adopting such a policy, Defendant voluntarily ran a risk of violating the law substantially greater than the risk associated with a reading that was merely careless.

57. Plaintiff and the class are entitled to statutory damages of not less than $100 and not more than $1,000 for each and every one of these violations, pursuant to 15 U.S.C. § 1681n(a)(1)(A). Plaintiff and the class members are also entitled to punitive damages for these violations, pursuant to 15 U.S.C. § 1681n(a)(2). Plaintiff and the class members are further entitled to recover their costs and attorneys' fees, pursuant to 15 U.S.C. § 1681n(a)(3).

## PRAYER FOR RELIEF

58. WHEREFORE, Plaintiff, on behalf of himself and the class, prays for relief as follows:

   a. Determining that this action may proceed as a class action under Rule 23(b)(3) of the Federal Rules of Civil Procedure;

   b. Designating Plaintiff as Class Representative and designating Plaintiff's counsel as counsel for the class;

   c. Issuing proper notice to the class at Defendant's expense;

   d. Declaring that Defendant violated the FCRA;

   e. Declaring that Defendant acted willfully, in knowing or reckless disregard of Plaintiff's rights and its obligations under the FCRA;

   f. Awarding statutory damages as provided by the FCRA;

   g. Awarding punitive damages as provided by the FCRA;

   h. Awarding reasonable attorneys' fees and costs as provided by the FCRA; and,

   i. Granting all other available relief, in law and in equity, as this Court may deem appropriate and just.

## DEMAND FOR JURY TRIAL

59. Pursuant to Rule 38(b) of the Federal Rules of Civil Procedure, Plaintiff and the class demand a trial by jury.

Dated: May 5, 2016 /s/ Jorge A. Gamboa

STEPHAN ZOURAS, LLP
Jorge A. Gamboa
205 North Michigan Ave.
Suite 2560
Chicago, IL 60601
Telephone: 312-233-1550

**ATTORNEYS FOR PLAINTIFF**

## **CERTIFICATE OF SERVICE**

I hereby certify that on May 5, 2016, a true and correct copy of the foregoing **COMPLAINT** was filed via this Court's CM/ECF system.

*s/ Jorge A. Gamboa*